# INTERNATIONAL HARVESTER CO. *vs.* ROBERT W. BLACKWAY.

*Question as to Validity of a Bill of Sale.*

Several years after the execution and recording of a bill of sale of certain personal property, its validity was assailed under exceptions filed to an auditor's account distributing the proceeds of the property of the vendor in the bill who had subsequently made an assignment for the benefit of his creditors. Upon an examination of the evidence, *held,* that the due execution of the bill of sale is established by a preponderance of the testimony, and that its validity had been admitted by the parties in interest at the time the assignment for creditors was made.

*Decided March 31st, 1910.*

Appeal from the Circuit Court for Cecil County (PEARCE, C. J., ADKINS and HOPPER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Joshua Clayton and Charles B. Findley, Jr.,* for the appellant.

*William S. Evans* and *Omar D. Crothers.* for Robert W. Blackway, appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Cecil County, sitting in Equity, ratifying and confirming Auditor's Report No. 2, in which the sum of five hundred and thirty dollars and thirty-one cents is allowed to R. W. Blackway upon his claim filed in these proceedings.

On the 14th day of July, 1897, Eugene Plummer, by deed dated as of that day, conveyed and assigned unto William T. Warburton certain personal property therein mentioned, in trust for the benefit of his creditors.

Some of the property in said deed mentioned, was included in an alleged bill of sale previously executed, on the 15th day of August, 1895, by Eugene Plummer to Robert W. Blackway, to secure an indebtedness of $1,045.15, said to be owing by Plummer to Blackway, and which is of record in the office of the clerk of the Circuit Court for Cecil County, and, so far as the records therein disclose, it is unpaid and unreleased.

The trustee disposed of the property mentioned in the deed of assignment and on the 6th day of October, 1897, reported the sale thereof to the Court, stating the amount of sales to be $711.38. The report was, on the 18th day of January, 1898, finally ratified and confirmed. In ratifying this report, the Court further ordered "that the papers be referred to the auditor of the Court, with directions to give notice to creditors of Eugene Plummer to bring in their claims, and to take proof *to show how much is now due* on the bill of sale given by said Plummer to Robert W. Blackway, mentioned in said assignee's report."

As alleged in the trustee's report of sale, the trustee, on the 6th day of August, 1897, entered into an agreement with Blackway in respect to the disposition of the property named in his bill of sale. By this agreement, "the proceeds arising from said sale are to be applied by the said Warburton to the payment of the *sum due on said bill of sale* to said Blackway."

No testimony was taken under the order of January 18th. 1898, and on the 25th day of September, 1905, upon the petition of Blackway the Court passed the second order again referring the papers to the auditor.

On the 22nd day of November, 1905, in compliance with the last named order, the testimony of Blackway alone was taken by the auditor in support of his claim, in the presence of the assignee and the solicitors for the petitioner and assignor, and upon the return of this testimony, on the 22nd day of January, 1908, the Court passed the third order remanding the case to the auditor for the purpose of stating an audit distributing the proceeds of sale, with power to take testimony in support of any or all claims filed against said estate, or any objections that might be made to any claim, and directing that notice be given to creditors to file their claims. Under this order much testimony was taken and returned to the Court on December 21st, 1908.

The auditor, on the 18th day of May, 1909, stated two accounts, known as Audit No. 1 and Audit No. 2. In the first, the proceeds of sale, after the payment of costs and expenses ($530.31), were distributed to four of his creditors, including the appellant, the International Harvester Company, in full payment of their claims with interest, amounting in the aggregate to $505.73, and the balance thereof $24.58, to Eugene Plummer, assignor; the claim of Blackway was excluded therefrom. By the second audit, the whole surplus $530.31, was distributed to Robert W. Blackway. Blackway excepted to the ratification of Auditor's Report No. 1, and asked the Court to ratify Report No. 2.

On June 23rd, 1909, the Court passed a further order directing that the papers in the cause be again remanded to the auditor "for the sole purpose of taking the testimony of William J. Duhamel (Justice of the Peace) in reference to the execution and acknowledgment of the bill of sale from Eugene Plummer to Robert Blackway and the making of the affidavit thereto."

In obedience to this order, the testimony of William J. Duhamel was thereafter taken and returned to the Court, whereupon it decided in favor of the validity of the claim of Blackway and sustained the exceptions taken by him to Auditor's Report No. 1; and in conformity with that opinion, the Court, on the same day, passed an order finally ratifying and confirming Auditor's Report No. 2, in which the claim of Blackway was allowed. It is from the passage of this order that the appeal is taken.

The questions to be determined by this appeal are: 1st, did Eugene Plummer execute unto Robert W. Blackway the bill of sale referred to in this case, to secure the payment of moneys owing by him to Blackway? And 2nd, if so, what amount was owing on said bill of sale at the time that the property mentioned in it passed into the hands of the assignee?

The original bill of sale, as the evidence discloses, was lost, but a certified copy of it was placed in evidence and is inserted in the record. To this is attached the name and seal of Eugene Plummer, attested by William J. Duhamel, and appended thereto is the formal certificate of acknowledgment taken before the said Duhamel, Justice of the Peace, and signed by him, wherein it is stated that Eugene Plummer personally appeared before the Justice and acknowledged the bill of sale to be his act, and that Robert W. Blackway also appeared before him and made oath in due form of law that the consideration of the bill of sale was true and *bona fide* as therein set forth. This acknowledgment is dated the 15th day of August, 1895.

The bill of sale, the validity of which is here assailed, upon its face, appears to have been in every way legally executed, by Eugene Plummer, the assignor, on the 15th day of August, 1895, and thereafter duly and properly recorded in the office of the Clerk of the Circuit Court for Cecil County. William J. Duhamel, the Justice of the Peace before whom the bill of sale was acknowledged testified that in his presence Eugene Plummer executed the bill of sale and acknowledged,

before him, the execution thereof; also related the facts and circumstances attending its execution as fully as could be expected after the lapse of so many years. Blackway testified that the sum named in the bill of sale represented the amount owing to him by Plummer at the time of its execution; that thereafter he made the affidavit to its consideration and had it recorded. He however, did not see Plummer sign the bill of sale,

By the testimony of Plummer, the existence of this bill of sale was known to him so early as 1896. Later, in July, 1897, he made the deed of assignment, and made it, as he alleges therein, because of his inability to pay in full all of his indebtedness. This indebtedness to Blackway must have been considered and recognized by him at the time, otherwise this statement would not have been correct, for without this alleged indebtedness to Blackway, the amount owing by him at that time, as shown by the claims filed, would not have exceeded three hundred and fifty dollars, less than one-half of the value of the property conveyed or assigned by him, as disclosed by the sale of the same made within three months thereafter by the trustee; the amount of sales, as reported by the trustee, being seven hundred and eleven dollars and thirty-eight cents. A large part of the five hundred and thirty dollars and thirty-one cents distributed to his creditors in Audit No. 1, consists of interest that had accrued on the claims allowed therein after the execution of the deed of assignment. Furthermore, the language of the agreement entreed into by the assignee and Blackway, by which agreement the proceeds of sale were to be "applied by the said Warburton to the payment of the *sum due on said bill of sale* to said Blackway," as well as the language of the order of the Court passed on the 18th day of January, 1898, directing the auditor "to take proof to show how much is *now due on the bill of sale,*" etc., is inconsistent with the contention that at that time the *validity* of the bill of sale was in dispute. Nothing whatever was done in obedience to the order of January 18th, 1898.

This property was sold by the assignee early in October, 1897, and the purchase money therefor was paid to him in cash, except that for which Blackway gave his note, amounting to $373.25. This money was deposited in bank, without interest, by the assignee, who thereafter became not only counsel for the assignor, but also for certain of the creditors. No steps, however, were taken by the assignee to settle the estate, nor did he, acting for and on behalf of the assignor or the creditors whom he represented, proceed in any way to inquire into the validity of this lien, but the Court, on the 25th day of September, 1905, upon the petition of Blackway, passed its order again referring the papers to the auditor. It was upon the order last passed and the succeeding order of January 22nd, 1908, that the evidence submitted in this case was taken.

To overcome the weight of this testimony and to sustain the contention that the bill of sale was never executed by Plummer and that there was no indebtedness from Plummer to Blackway, they, twelve years after the alleged execution of the bill of sale, offered the evidence of Plummer, his wife, Allen and others. Plummer, his wife and Allen, in their testimony, give their recollection of conversations occuring between each of them and Blackway, at or about the time of the execution of the bill of sale wherein they alleged Blackway made statements and admissions inconsistent with the alleged execution of the bill of sale by Plummer and the *bona fides* of the debt upon which the same was based. Plummer and his wife testified as to the inability of Plummer to write his name, and other witnesses testified that Plummer, in executing papers, made his mark and did not write his name thereto.

We think this stale oral testimony fails to overcome the evidence offered in support of the validity of Blackway's claim, and that the bill of sale must be sustained. We will therefore affirm the order of the Court below.

*Order affirmed with costs to the appellee.*